PEOPLE v. JOHNSON.

LARCENY—EVIDENCE—GREAT WEIGHT OF EVIDENCE.
  Conviction of larceny is set aside, on review, where verdict of
    guilty is against great weight of evidence.

Error to Superior Court of Grand Rapids; Ver-
dier (Leonard D.), J. Submitted October 16, 1930.
(Docket No. 168, Calendar No. 35,229.) Decided
December 2, 1930.

Mary S. Johnson was convicted of larceny. Re-
versed, and new trial ordered.

*Francis Borrelli, Edward G. Burleson,* and *Julius
J. Herscher,* for appellant.

*Wilber M. Brucker,* Attorney General, *Bartel J.
Jonkman,* Prosecuting Attorney, and *Thaddeus B.
Taylor,* Assistant Prosecuting Attorney, for the
people.

BUTZEL, J. Mary S. Johnson was convicted of
the larceny of two fur coats of the value of $875
from the Siegel Company in Grand Rapids. It is
claimed that respondent was one of two colored
women who on the 21st day of November, 1927,
shopped at the Siegel store. One of the women tried
on the two coats in question in the fitting room. The
woman stated that the coats were too high priced,
whereupon the manager said that a manufacturer,
with samples over at a hotel, had just the coat that
they were looking for, and that he would step over

and get it. He left the women for a short period, during which time the lady clerk who waited on the prospective customers was in and out of the fitting room. When the manager returned with a cheaper coat, one of the women stated that she would buy the coat and paid a $10 deposit on it, and that she would call for the coat shortly. After a receipt was given for the $10 running to some one claiming an entirely different name than that of respondent, she left the store with her companion. They were seen to leave without any parcels, nor did the appearance of their clothes arouse any suspicion. Towards evening, when the store was being closed for the day and the stock checked up, it was found that the two coats were missing. The police were notified, and an officer, Coe, some ten days later, went to Chicago where he arrested Mrs. Eubanks as one of the shoplifters. She was released upon protesting her innocence and stating that respondent, at whose house she had been rooming, was a professional shoplifter and that she had seen two fur coats with the Siegel Company label on them hanging in respondent's home. It was two and a half years later before respondent was arrested, extradited, tried, and found guilty. The fact that the trial judge only imposed a sentence of a fine of $350 or an alternative of six months' imprisonment, after testimony that respondent was a professional shoplifter and had stolen coats of the value of $875, is indicative of the fact that the judge himself doubted her guilt.

Respondent registered at a hotel in Grand Rapids on the 16th day of November, 1927, and was seen at that time in the company of another colored woman. There was some testimony that she had remained at the hotel five days, but there were no records whatsoever to prove this, as the hotel register does

not show when guests checked out. The manager of the Siegel Company identified the respondent although he had not seen her in two and one-half years. The clerk in the Siegel store stated that respondent resembled the person upon whom she had waited prior to the time the coats were found missing, but that according to her recollection respondent looked older and thinner than the person she had waited on and also respondent had only one arm. The loss of the arm occurred after November 21, 1927. The clerk stated that she would not swear that respondent was the person who was at the store on the day in question. The people largely rely on the testimony of Mrs. Eubanks, who testified that she had seen the coats in respondent's home. Mrs. Eubanks had been twice arrested and convicted of disorderly conduct. She had been arrested by officer Coe for the theft of the coats, but was released on giving the information charging respondent with the crime. Mrs. Eubanks also had quarreled with respondent, and had written a letter saying, "I tricked you." Her testimony is far from convincing. Respondent took the witness stand in her own behalf and stated that she had never been arrested in her life. She owned a home in Chicago and had been in Grand Rapids on the 16th of November. She claims she left the following day for Lansing and then had returned to Chicago. She further testified that on the day in question she had been at the home of a friend whose brother had been stabbed in an affray and that she had helped to take care of him. She further testified that on the day in question she had signed a bail bond for a friend of hers in the municipal court in Chicago. The records of the court and the bond were produced and it was shown that her name was signed to the bail bond on

the 21st day of November, 1927. The court clerk stated that he was acquainted with respondent and that he had seen her on that day in one of the court-rooms in Chicago. He stated that so many people came in and out of the courtrooms that it would be impossible to recognize everyone who signed a bond at the time of signature and for that reason could not state positively that the signature on the bond was that of respondent. The testimony of other witnesses showed that she was in Chicago on the day in question. The day was positively fixed on account of the stabbing affray and also because of its proximity to Thanksgiving, which fell on the fol-lowing Thursday. The testimony of respondent contains some inaccuracies. They, however, refer to matters that had taken place more than two years before the trial and could be due to mistakes in memory.

There was no testimony given by the prosecution as to the similarity between the respondent's hand-writing on the register and the bail bond. This might be accounted for by the fact that respondent had been divorced during the interval of two and one-half years and thereupon had taken her former surname of Johnson instead of Booker. With the unreliability of the testimony of Mrs. Eubanks upon whom the people must largely rely in making out their case, and the further fact that the bail bond was executed in Chicago on the very day in question, we are led irresistibly to the conclusion that the ver-dict of the jury was against the great weight of the evidence. For this reason, the conviction must be set aside, and a new trial ordered.

WIEST, C. J., and CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.